UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

VICTOR GARCIA, :

Petitioner, : 06 Civ. 10196 (SHS) (DF)

-against- : **REPORT AND RECOMMENDATION**

DARWIN LACLAIR, SUPERINTENDENT, GREAT MEADOW CORRECTIONAL FACILITY, :

Respondent.

-----------------------------------------------------------X

**TO THE HONORABLE SIDNEY H. STEIN, U.S.D.J.:**

*Pro se* petitioner Victor Garcia ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2000 conviction in the Supreme Court of the State of New York, New York County. (Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, dated Oct. 12, 2006 ("Petition") (Dkt. 2).) Upon a jury verdict, Petitioner was found guilty of murder, assault, and criminal weapon possession, based upon his involvement in a "drive-by shooting" in 1991. (*Id.*) Petitioner received an aggregate sentence of 55 years to life imprisonment and is currently incarcerated at the Great Meadow Correctional Facility in Comstock, New York. (*See id.*)

In his Petition and supporting papers,[1] Petitioner raises a number of separate grounds for relief. In opposition, Respondent argues that the Petition is time-barred, or, in the alternative, that Petitioner's claims are not cognizable on habeas review, are procedurally barred, and/or are

---

[1] Petitioner attached to his Petition a signed, undated document entitled "Memorandum of Law in Support of Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. Sec. 2254," which contains Petitioner's legal arguments and is hereinafter referred to as "Pet. Mem." (*See id.*) Petitioner also attached to his Petition an unsigned, undated memorandum entitled "Preliminary Statement" which begins, "This Memorandum of Law and Fact is submitted in support of [the Petition] . . . .," which primarily sets forth Petitioner's summary of the pertinent facts and procedural history, and is hereinafter referred to as "Pet. Supp. Mem." (*See id.*)

meritless. (*See* Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus, dated March 2007 ("Resp. Mem.") (Dkt. 8), at 10-32.) For the reasons set forth below, I recommend that the Petition be dismissed in its entirety.

**BACKGROUND**

On July 22, 1991, three people were shot during a drive-by shooting on Eighth Avenue in Manhattan; two died. (*See* Pet. Supp. Mem. at 3; Resp. Mem. at 1.) The claims at issue in this proceeding arise from Petitioner's conviction in 2000 for his involvement in that shooting.

In November 1991, Petitioner was stopped by authorities for questioning after he tried to use an altered passport at an airport in the Dominican Republic. (*See* Appendix in Support of Answer Opposing Petition for a Writ of Habeas Corpus, filed March 7, 2007 ("Resp. App.") (Dkt. 8), at Ex. A (Brief for Defendant-Appellant, dated Nov. 2002 ("Pet. Direct Appeal Mem.")), at 7; Transcript of Trial, dated June 22 to July 6, 2000 ("Trial Tr.") (Dkts. 19, 20, 21), at 696-98, 709-14.) According to a written statement prepared by the Dominican intelligence officer who interviewed him, Petitioner said that he had been driving his car on July 22nd when two of Petitioner's "friends who were sitting in the back seat of the car shot several times[, a]nd they hurt several people." (Trial Tr. at 716-17; *see also* Pet. Direct Appeal Mem. at 7.) According to the officer's statement, Petitioner later learned that "two of the four people that were hurt had died," and Petitioner "r[a]n away" to the Dominican Republic. (Trial Tr. at 717.) Petitioner was released following this questioning. (*See* Pet. Direct Appeal Mem. at 7; Resp. Mem. at 3.)

In 1994 or early 1995, roughly three years after the drive-by shooting, Manuel Abreu ("Abreu") was arrested and charged with certain other drug-related crimes, stemming from his involvement with the Bello narcotics organization. (Pet. Supp. Mem. at 3; Resp. Mem. at 3.) In

March 1995, Abreu entered into a cooperation agreement with federal authorities in which he agreed to tell the truth about all of his criminal activities. (Pet. Supp. Mem. at 3, 11; Resp. Mem. at 3.) Abreu admitted to participating in the July 22, 1991 drive-by shooting (*see* Pet. Supp. Mem. at 4; Resp. Mem. at 3), but claimed that Petitioner had been the shooter during that incident (*see* Pet. Supp. Mem. at 4; *see also* Resp. Mem. at 5 (noting Abreu's trial testimony that Petitioner had been the gunman)).

In January 1995, Petitioner – who, by then, had returned to the United States – was arrested on federal charges related to Petitioner's own involvement in the Bello narcotics organization. (*See* Resp. Mem. at 3; Pet. Supp. Mem. at 8.) Petitioner pleaded guilty to those charges, and was sentenced and incarcerated. (*See* Resp. Mem. at 3; Pet. Supp. Mem. at 8.)

In 1998, the federal facility where Petitioner was incarcerated was informed that there was an outstanding warrant for Petitioner's arrest arising from Petitioner's alleged murder of the drive-by shooting victims on July 22, 1991. (Resp. Mem. at 3-4; Resp. App., Ex. G (Ex Parte Petition for a Writ of Habeas Corpus Pursuant to Article 70, dated November 1994 ("State Habeas Pet.")), at ¶ 2.) On May 6, 1998, Petitioner requested a final disposition of the charges contained in that warrant. (*See* Resp. Mem. at 3-4; State Habeas Pet. at ¶ 3.) Petitioner was charged by a New York State grand jury on June 19, 1998, transferred to New York State custody on July 30, 1998, and arraigned on August 4, 1998. (*See* Resp. Mem. at 4; State Habeas Pet. at ¶¶ 5-6.)

**1. <u>Pre-Trial Proceedings and Trials</u>**

Following the arraignment, Petitioner, through counsel, made various pre-trial motions. On January 11, 1999, Petitioner moved to dismiss the indictment on the ground that an unjustifiable delay in his prosecution had violated his right to a speedy trial as guaranteed by the

Sixth Amendment of the Constitution and Section 30.30 of the New York Criminal Procedure Law. (*See* Resp. Mem. at 4; State Habeas Pet. at ¶¶ 7-8.) Petitioner's counsel did not specifically argue, however, that this delay violated the Interstate Agreement on Detainers Act ("IAD").[2] (*See* State Habeas Pet. at ¶¶ 8, 10.) The court denied Petitioner's speedy trial motion on February 22, 1999, holding that the delay from 1995 to 1998 "'was not unreasonable' in light of the 'gravity of the crime, and the desire to build a strong case.'" (Resp. App., Ex. H (Respondent's Affirmation in Opposition to Petitioner's state habeas petition), at ¶ 6; *see also* Resp. Mem. at 4; State Habeas Pet. at ¶ 7.) Petitioner also filed motions to suppress certain evidence, which the court denied on November 5, 1999. (*See* Resp. Mem. at 4.)

Petitioner was then brought to trial twice for his alleged participation in the shooting. The first trial started on November 5, 1999. The prosecution's only eyewitness was Abreu, and the defense forcefully attacked his credibility. (*See* Pet. Direct Appeal Mem. at 4; Resp. Mem. at 4-5 (describing Petitioner's approach as "an all-out attack on Abreu's credibility").) The jury was unable to reach a unanimous verdict, and the court declared a mistrial. (*See* State Habeas Pet. at ¶ 12.)

Petitioner's second trial, which began in June 2000, differed from his initial trial in two relevant respects. First, the jury was charged that Petitioner could be found guilty as an accessory or accomplice – a charge that the jury had not received at the first trial. (*See* Pet. Direct Appeal Mem. at 5.) Second, the prosecution presented an additional witness, Robert

---

[2] "The IAD requires states to hold a trial within 180 days on any untried indictments, complaints, or information for which a detainer was lodged." *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 153 (S.D.N.Y. 2007).

Noesi ("Noesi"), who had not witnessed the shooting itself, but claimed to have seen Petitioner and Abreu later that night. (*See* Pet. Direct Appeal Mem. at 4; Trial Tr. at 243-44.)

Noesi testified that, on the night of the drive-by shooting, he saw Abreu and Petitioner talking to three other people near Noesi's residence. (*See id.*) Noesi testified that an individual within that group said, "We did it" or "I did it," but Noesi could not identify the speaker or subject matter of the remark. (*See* Trial Tr. at 290-92; Pet. Direct Appeal Mem. at 4.) Petitioner objected to the admission of this testimony on the ground that it was inadmissible hearsay (*see* Trial Tr. at 250-53), but the trial judge overruled Petitioner's objection (*see id.* at 258-60). Immediately following Noesi's testimony, Petitioner's counsel moved for a mistrial on the ground that the testimony was irrelevant and overly prejudicial. (*Id.* at 264.) The court denied that motion. (*See id.* at 265; *see also id.* at 285 (denying renewed motion for mistrial).)

On July 6, 2000, the jury convicted Petitioner of three counts of second-degree murder, including two counts of intentional murder (*see* N.Y. Penal Law § 125.25(1)) and one count of "depraved indifference" murder (*see id.* § 125.25(2)); the jury also convicted Petitioner of two counts of first-degree assault, one count of second-degree weapon possession, and one count of third-degree weapon possession (*see* Petition, ¶ 5; Resp. Mem. at 5). On September 12, 2000, Petitioner was sentenced to an aggregate term of 55 years to life. (Petition, ¶¶ 2, 3, 5.)

**2. <u>Petitioner's Direct Appeal</u>**

On direct appeal, Petitioner argued that (1) his conviction was against the weight of the evidence; (2) the admission of Noesi's testimony violated Petitioner's right to confront and cross-examine witnesses, as well as his right to a fair trial; (3) Petitioner was unfairly surprised by the prosecution's request for an accomplice liability charge; and (4) Petitioner's sentence was excessive. (*See generally* Pet. Direct Appeal Mem.) On December 23, 2003, the Appellate

Division affirmed the judgment against Petitioner in all respects. *See People v. Garcia*, 768 N.Y.S.2d 606 (1st Dep't 2003).

In denying Petitioner's weight of the evidence claim, the Appellate Division held that "[i]ssues of credibility, including the weight to be given to the background of the accomplice witness and the benefits he obtained in return for his testimony, were properly considered by the jury and there is no basis for disturbing its determinations." (*Id.* (citing *People v. Gaimari*, 176 N.Y. 84, 94 (1903)).) With respect to Petitioner's statement "in which he placed himself in the vehicle from which the fatal shots were fired," the court found that "the jury could have reasonably credited the inculpatory aspect of [Petitioner's] statement while discrediting its exculpatory aspect." (*Id.*)

The court further held that the trial court had properly admitted Noesi's statement about what he had overheard after the shooting. (*Id.*) The court explained that the "comment was not received for its truth, but rather for the fact that the statement was made[, which constituted] relevant evidence tending to corroborate [another] witness's testimony." (*Id.* (citing *People v. Davis*, 58 N.Y.2d 1102 (1983)).) The court further noted that "a thorough limiting instruction" had been provided to the jury regarding the statement. (*Id.*) The court also held that Petitioner's Confrontation Clause claim regarding this statement was unpreserved because Petitioner's "objection [at trial] to this evidence was grounded entirely in state evidentiary law." (*Id.* (citing *People v. Kello*, 96 N.Y.2d 740, 743-744 (2001); *People v. Maher*, 89 N.Y.2d 456, 462-463 (1997)).) The court declined to review the unpreserved claim in the interest of justice. (*Id.* at 607.)

As to Petitioner's claim of unfair surprise, the Appellate Division rejected Petitioner's claim that he had been "surprise[d]" by the prosecution's decision to pursue an accessory

liability charge at trial, observing that Petitioner "had notice of the prosecution's intentions." (*Id.*) In particular, the court noted that "the People had made clear in a bill of particulars and in other documents that they were proceeding on the alternate theories that defendant personally shot the victims, or that he aided others in doing so, and [furthermore the] evidence supporting the theory of accomplice liability was provided by defendant in his own statement." (*Id.* (citing *People v. Spann*, 56 N.Y.2d 469 (1982); *People v. Alford*, 666 N.Y.S.2d 913 (1998)).) The court also explained that Petitioner should not have been prejudiced by the accessory liability charge because "in any event, there is no distinction between liability as a principal and as an accessory." (*Id.* (citing cases).)

In a letter dated January 15, 2004, Petitioner requested leave to appeal to the New York Court of Appeals from the Appellate Division's affirmance of his conviction. (*See* Resp. App., Ex D.) In that letter, Petitioner specifically asked the Court of Appeals to grant leave based upon "two serious errors": (1) the admission of Noesi's testimony; and (2) the trial court's granting of the prosecution's last-minute request for an accomplice liability charge. (*See id.*) The letter did not refer to any of the other claims that Petitioner had raised before the Appellate Division, or to the other sections of the brief that he had submitted to that court. On March 15, 2004, the Court of Appeals denied Petitioner's application for leave to appeal. *See People v. Garcia*, 2 N.Y.3d 740 (2004).

**3. <u>State Habeas Petition</u>**

On November 16, 2004, Petitioner filed a petition for a writ of habeas corpus in New York Supreme Court, Washington County, pursuant to Article 70 of the C.P.L.R. (*See* State

Habeas Pet.)[3] That petition included the following claims: (1) that the People had violated the IAD by failing to bring Petitioner to trial within the IAD's time limits; (2) that the People had lost subject matter jurisdiction over Petitioner's case as a result of this IAD violation; (3) that Petitioner's trial counsel had been ineffective because he had failed to raise the alleged IAD violation; and (4) that the trial court had improperly handled Petitioner's speedy trial motion. (*Id.* at 5-6.)

On May 23, 2005, the court held that state habeas corpus relief was unavailable to Petitioner, given that Petitioner could have raised his claims "either on direct appeal or in a CPL article 440 motion," but failed to do so. (*See* Petition at 12; Resp. App., Ex. I (Decision and Order of Justice Philip A. Berke, May 23, 2005), at 2.) Petitioner did not appeal the denial of his state habeas petition. (*See* Petition at p. 12, ¶ d(4).) He asserts that his failure to appeal was the result of "lack of knowledge and ineffective assistance by the Legal Assistant at the Facility Law Library." (*Id.* at p. 12, ¶ (b).)

#### 4. ***Coram Nobis* Application**

In a motion for a writ of error *coram nobis* dated September 21, 2005, Petitioner argued that he had received ineffective assistance of counsel (a) when his trial counsel failed to object to

---

[3] Although the decision denying Petitioner's state habeas petition indicates that the petition was "filed" on November 30, 2004, it also states that the petition was "verified" on November 16, 2004. (Resp. App., Ex. I.) Petitioner alleges that he filed his state habeas petition on November 16, 2004 (*see* Reply to Respondent's Oppos[]ition, filed July 5, 2007 (Dkt. 13) ("Pet. Reply"), at 2), which the Court takes to mean that he delivered it to prison officials for mailing on that date. The law is clear that, for the purpose of tolling AEDPA's statute of limitations, a petitioner's state post-conviction challenge is deemed "pending" – and hence tolls the limitations period – as of the date it is delivered to prison officials for mailing. *See Fernandez v. Artuz*, 402 F.3d 111 (2d Cir. 2005); *see generally* 28 U.S.C. § 2244(d)(2) (tolling the limitations for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending").

the trial court's jury charge regarding intentional and "depraved indifference" murder, and the jury's purportedly "inconsistent" verdict; and (b) when his appellate counsel failed to raise an ineffective assistance of trial counsel claim based on that failure to object. (*See* Resp. App., Ex. J, ¶ 4.) According to Petitioner, the trial judge had improperly instructed the jury to consider the intentional murder and depraved indifference murder charges in the conjunctive, and Petitioner's trial counsel should have objected to that charge. (*Id.* at ¶ 9 (citing Trial Tr. at 1188).) Furthermore, Petitioner argued, the jury delivered an inconsistent verdict by convicting him of both charges, and his trial counsel should have objected to that verdict. (*See id.* at ¶ 14.)

In response, the state maintained that it was entirely proper to charge a defendant with both intentional and depraved indifference murder, in the conjunctive, so long as the defendant was accused of shooting at one person, but hitting and killing a different person. (Resp. App., Ex. K, at 9-10 (citing cases).) Likewise, the state argued, a conviction on both charges was proper. (*See id.*) Thus, according to the state, the objections urged by Petitioner in his *coram nobis* application were meritless and could not support his ineffective assistance of counsel claims. (*See id.*)

The Appellate Division summarily denied Petitioner's motion for a writ of error *coram nobis* on March 23, 2006 (*id.*, Ex. L), and the Court of Appeals denied Petitioner leave to appeal that decision on July 17, 2006 (*id.*, Ex. M).

**5. The Instant Petition**

On October 13, 2006, Petitioner filed a petition in this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* Petition.)[4] In this Court, Petitioner raises the following claims:

1. that his conviction was against the weight of evidence, and/or was based upon evidence that was legally insufficient;

2. that he was denied his right to confrontation and right to a fair trial by the admission of hearsay evidence;

3. that he was unfairly surprised and prejudiced when, in the middle of his second trial, the prosecution started pursuing a theory of accomplice liability;

4. that his rights were violated by (a) the People's failure to bring him to trial within a certain number of days, in violation of the IAD, and (b) his trial counsel's failure to raise the IAD issue;

5. that he received ineffective assistance of counsel when his trial counsel failed to object to the trial court's jury charge and the jury's purportedly "inconsistent" verdict; and

6. that he received ineffective assistance of counsel when his appellate counsel failed to raise, on direct appeal, trial counsel's failure to object to the jury charge and verdict.

(Petition, ¶ 12; Pet. Supp. Mem. at 0-1 (numbering starts at zero).)

On April 16, 2007, Petitioner expressed to this Court a desire to withdraw his IAD claim, without prejudice, pending exhaustion of that claim in state court. (*See* Petitioner's submission to the Court dated April 16, 2007 (Dkt. 12).) On April 24, 2007, the Court ordered that, if

---

[4] Although the Petition was not docketed until October 23, 2006, the Court deems it "filed" on October 13, 2006, the date Petitioner placed it in the prison mailing system. (*See id.* at 16; *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (*pro se* prisoner litigant's complaint considered "filed" as of date of delivery to prison officials for transmittal to court), *modified on other grounds*, 25 F.3d 81 (2d Cir. 1994).)

Plaintiff wished to seek a stay pending exhaustion, he should "file an appropriate motion for a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005)." (Order, dated Apr. 24, 2007 (Mem. Endors.) (Dkt. 12).)[5]

On July 5, 2007, Petitioner filed a "Motion to Stay and Amend [the] Petition" requesting a stay in order to exhaust (1) his IAD claim, (2) his related ineffective assistance of trial counsel claim, and (3) an ineffective assistance of appellate counsel claim that he had not asserted in his Petition, but which he sought to add via amendment. (*See* Petitioner's Notice of Motion to Stay and Amend Petition, dated June 28, 2007 (Dkt. 14) ("Motion to Stay and Amend"), at ¶¶ 4-5.) Petitioner affirmed that, in an attempt to exhaust, he had raised all three of these claims in state court actions in June 2007. (*See* Petitioner's Affirmation in Support of Motion to Stay and Amend Petition, attached to Motion, ¶¶ 3-5; *id.*, Exs. A, B (state court filings).)

In a Memorandum and Order dated March 21, 2008, this Court denied Petitioner's motion in its entirety, finding that Petitioner had failed to demonstrate "good cause" for his failure to exhaust the three claims at issue prior to commencing his habeas action. (*See* Order, dated Mar. 21, 2008 (Dkt. 18), at 7 (citing *Rhines*, 544 U.S. at 277).)

## DISCUSSION

### I. STATUTE OF LIMITATIONS

Respondent argues, as a threshold matter, that all of Petitioner's claims are barred by the applicable statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(d) ("AEDPA"). (*See* Resp. Mem. at 10-14.) AEDPA provides that a writ of

---

[5] In that Order, the Court cautioned Petitioner that, "if he simply withdraws this claim, he may not be able to reassert it in this action later, but would have to move for leave to amend the petition, which may or may not be granted." (*Id.*)

habeas corpus must be filed within one year of the date upon which a petitioner's conviction becomes "final," *see* 28 U.S.C. § 2244(d)(1)(A), or within one year of other dates not relevant here, *see id.* § 2244(d)(1). Although AEDPA imposes a one-year limitations period, the statute provides for tolling during the pendency of state court challenges to the conviction: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2).

In this case, the AEDPA statute of limitations began to run on June 15, 2004, the date when Petitioner's conviction became final – that is, 90 days after the Court of Appeals denied Petitioner leave to appeal the Appellate Division's affirmance of the judgment against him. (Resp. Mem. at 11; Reply to Respondent's Oppos[]ition, filed July 5, 2007 (Dkt. 13) ("Pet. Reply"), at 2; *see Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).) The ultimate question of timeliness, however, depends on whether the filing of Petitioner's state court habeas petition tolled AEDPA's statute of limitations. (*See* Dkt. 5 (letter from Respondent to the Court stating that "[t]he issue of whether [Petitioner's] federal habeas is timely will rest on whether the state habeas petition tolled the time").)

While Respondent contends that no such tolling occurred (*see* Resp. Mem. at 12-14), courts in this circuit have split regarding whether a state habeas petition tolls the AEDPA statute of limitations, *see, e.g.*, *Clark v. Artus*, No. 09-CV-3577 (SJF), 2010 U.S. Dist. LEXIS 33096, at *11-12 (E.D.N.Y. Apr. 1, 2010) (concluding that AEDPA's statute of limitations was tolled during the pendency of petitioner's state court habeas petition, and during the appeal of the decision denying that state habeas petition); *Forman v. Artuz*, 211 F. Supp. 2d 415, 420-21 (S.D.N.Y. 2000) (holding that state habeas corpus petition did not toll AEDPA limitations

period); *Martino v. Berbary*, No. 03-cv-0923S, 2005 U.S. Dist. LEXIS 6232, at *5-6 (W.D.N.Y. Mar. 30, 2005) ("there is a split within the district courts in the Second Circuit on the question of whether New York State habeas corpus proceedings toll the AEDPA[] statute of limitations" (collecting authority)); *Ali v. Brown*, No. 06 CV 2192 (ENV) (SMG), 2006 U.S. Dist. LEXIS 87089, at *7 n.1 (E.D.N.Y. Nov. 30, 2006) (not for publication) (noting "split in authority" on this issue (citing *Martino*)).

In this instance, the Court need not decide whether Petitioner's state habeas petition tolled the AEDPA statute of limitations. Even if the Petition is timely, it should be dismissed in its entirety for the reasons set forth below.

## II. PETITIONER'S CLAIMS

### A. Procedurally Barred Claims

Certain of Petitioner's claims are procedurally barred from review by this Court, either because Petitioner did not exhaust the claims in the state courts, as required for federal habeas review, and no longer has an available avenue for exhausting the claims, or because the state courts decided his federal claims on independent and adequate state-law grounds. The procedurally defaulted claims include: (1) Petitioner's challenge to the legal sufficiency of the evidence supporting the verdict against him; (2) Petitioner's Confrontation and Due Process Clause challenges to the trial court's admission of hearsay evidence; (3) Petitioner's claims based on an alleged violation of the IAD and trial counsel's alleged failure to afford Petitioner effective assistance by raising that violation before the trial court; and (4) Petitioner's ineffective assistance of trial counsel claim based on trial counsel's failure to raise certain objections to the jury charge and the verdict. The bases for Petitioner's default of these claims are discussed in turn.

**1. Legal Sufficiency of the Evidence (Claim 1)**

For his first habeas claim, Petitioner alleges that his conviction was "against the weight of the evidence" at trial, a claim he also raised on his direct appeal. (*See* Petition, ¶ 12; Resp. App., Ex. A, at 23-27.) A "weight of the evidence" claim, however, is grounded entirely in state law. It originates from New York Criminal Procedure Law § 470.15(5), which permits an appellate court to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." *See also People v. Bleakley*, 69 N.Y.2d 490, 495 (1987).

Federal habeas review is not available where there is simply an error of state law. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or laws or treaties of the United States"); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citations omitted)). Thus, to the extent Petitioner is now attempting to raise his "weight of the evidence" claim in this habeas proceeding, the claim must be dismissed as non-cognizable. *See, e.g.*, *Douglas v. Portuondo*, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002) ("A federal habeas court cannot address 'weight of the evidence' claims because . . . the 'weight of the evidence' argument is a pure state law claim . . . for which habeas review is not available." (internal quotation marks and citations omitted)); *Kearse v. Artuz*, No. 99 Civ. 2428 (TPG), 2000 U.S. Dist. LEXIS 12649, at *2 (S.D.N.Y. Sept. 5, 2000) (summarily dismissing challenge to verdict as against the weight of the evidence on the ground that "[d]isagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief").

To the extent that, based on the language of the supporting memoranda that he filed with this Court, Petitioner's "weight of the evidence" claim may be alternatively construed to assert a federal due process claim that the evidence was legally insufficient to support the verdict,[6] Petitioner's claim is unexhausted. A review of his state-court filings shows that Petitioner plainly did not raise a federal "legal insufficiency" claim before the state courts, prior to raising it in this Court (*see* Resp. App. Ex. A, at 23-27 (arguing weight of the evidence, but not legal insufficiency, on direct appeal)).

A federal court may not consider a petition for a writ of habeas corpus unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "'opportunity to pass upon and correct' alleged violations of . . . prisoners' federal rights." *Picard*, 404 U.S. at 275 (citing *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)). There are several ways by which a petitioner can fairly present a federal claim to the state appellate court, including by citing the relevant provisions of the federal Constitution in his appellate brief. *See Davis v. Strack*, 270 F.3d 111 (2d Cir. 2001). Once the state courts are apprised of the constitutional nature of a

---

[6] *See* Pet. Mem. at 1 (stating that the evidence was "**insufficient** to support his conviction on all counts" (bold in original); *id.* at 2 (arguing that, under *Jackson v. Virginia*, 443 U.S. 307 (1979), the Court must reverse a conviction that is based upon legally insufficient evidence)); *see also Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (noting that the submissions of a *pro se* petitioner should be held to a "'less stringent standard[] than formal pleadings drafted by lawyers'" (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (court should read *pro se* submissions "liberally and interpret them to raise the strongest arguments they suggest" (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

petitioner's claims, the exhaustion requirement is fulfilled when those claims have been presented to "the highest court of the pertinent state." *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (internal quotation marks and citation omitted).

Here, although Petitioner's legal insufficiency claim is unexhausted, it may be "deemed" exhausted, as Petitioner can no longer pursue such a claim in the state courts. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001); *Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991).[7] When, however, a claim is deemed exhausted because of a procedural bar, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default," *Gray v. Netherland*, 518 U.S. 152, 162 (1996) (citations omitted); *accord Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 633 (2d Cir. 2001) (citations omitted), or that "failure to consider the [defaulted] claim will result in a fundamental

---

[7] As the claim could have been raised on the face of the trial record, Petitioner could have raised it on his direct appeal, but he did not do so, and he is not now entitled to a second direct appeal. *See Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (finding that remedies in New York State courts were no longer available because "[petitioner] has already taken his one direct appeal, and [his] claim is procedurally barred from consideration in a collateral attack on his conviction"), *cert. denied*, 166 L. Ed. 2d 740 (2007). Petitioner is also foreclosed from raising the claim collaterally in a Section 440.10 motion. *See* N.Y.C.P.L. § 440.10(2)(c) (barring collateral review of claims that could have been raised on direct appeal). Nor can he seek state review of this claim pursuant to either a writ of error *coram nobis*, *see People v. Gordon*, 584 N.Y.S.2d 318 (2d Dep't 1992) (*coram nobis* relief only available for claims of ineffective assistance of appellate counsel) (citation omitted), or a state writ of habeas corpus, *see People ex rel. Allah v. Leonardo*, 565 N.Y.S.2d 331 (3d Dep't 1991) (state writ of habeas corpus unavailable where claim could have been raised on direct appeal) (citations omitted). Thus, Petitioner now has no procedural recourse to New York's courts to advance this unexhausted claim.

miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (internal quotation marks and citations omitted).

"Cause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Ayuso v. Artuz*, No. 99 Civ. 12015 (AGS) (JCF), 2001 U.S. Dist. LEXIS 2504, at *23 (S.D.N.Y. Mar. 7, 2001); *Williams v. Artus*, 08 Civ 11356 (JGK), 2010 U.S. Dist. LEXIS 21105, at *17 (S.D.N.Y. Mar. 5, 2010). Thus, cause for a default exists where a petitioner can show that (1) "the factual or legal basis for a claim was not reasonably available to counsel," (2) "'some interference by state officials' made compliance [with the procedural rule] impracticable," or (3) "the procedural default is the result of ineffective assistance of counsel." *Bossett*, 41 F.3d at 829 (citation omitted). "Prejudice" requires a petitioner to demonstrate that the alleged constitutional error worked to his "*actual* and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *accord Femia v. United States*, 47 F.3d 519, 524 (2d Cir. 1995).

In this instance, Petitioner has not shown – and cannot show – that the factual or legal basis for his defaulted legal insufficiency claim was not reasonably available at the time of his direct appeal. Nor has Petitioner alleged, and there is no evidence suggesting, that his failure to raise the claim on direct appeal resulted from either interference by state officials or ineffective assistance of appellate counsel. As Petitioner cannot show cause for his procedural default, this Court need not reach the question of whether Petitioner can show prejudice. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need

not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

As noted above, the Court may also excuse a procedural default where the petitioner "can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Coleman*, 501 U.S. at 750). This exception, however, is quite narrow; it is "concerned with actual as compared to legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Thus, to meet this standard, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier*, 477 U.S. at 496. "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "The petitioner thus is required to make a stronger showing than that needed to establish prejudice." *Id.* at 327 (citations omitted).[8]

In this case, Petitioner has also failed to show any probability that this Court's failure to review his claim would result in a fundamental miscarriage of justice, as he has offered no evidence, scientific or otherwise, showing his actual innocence. Thus, Petitioner has not demonstrated that he can overcome the procedural bar to this Court's consideration of his unexhausted legal insufficiency claim.[9]

---

[8] It is rare that a petitioner will be able to satisfy the actual innocence standard; indeed, "in virtually every case, the allegation of actual innocence has been summarily rejected." *Schlup*, 513 U.S. at 324 (citation omitted).

[9] Moreover, even if, by arguing before the state courts that the verdict was against the weight of the evidence, Petitioner could be found to have exhausted his federal claim regarding

**2. Admission of Hearsay Statement (Claim 2)**

For his second habeas claim, Petitioner alleges that the admission of an out-of-court statement ("I did it." or "We did it.") denied Petitioner his federal constitutional right to confront adverse witnesses and/or his right to a fair trial. (Petition, ¶ 12, Ground Two.) Petitioner exhausted his Confrontation Clause claim, but the claim is procedurally barred from habeas review because it was decided by the state court on an independent and adequate state-law ground – *i.e.*, that the claim was not preserved at trial. As for his due process claim, Petitioner failed to exhaust such a claim, which should now be deemed exhausted, and also procedurally barred.

**a. Confrontation Clause Challenge**

At trial, Petitioner's counsel objected to the admission of the out-of-court statement on the ground that it was hearsay, but did not argue that the statement's admission violated Petitioner's federal constitutional rights. (*See* Trial Tr. at 250-60, 277-85.) On direct appeal, however, Petitioner claimed that the admission of the out-of-court statement violated his Sixth Amendment right to confront witnesses against him. (Resp. App., Ex. A, at 28-32.) The Appellate Division rejected that claim as "unpreserved," noting that Petitioner's

---

the legal sufficiency of the evidence, his federal claim would be subject to dismissal for lack of merit. "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The essence of Petitioner's argument about "insufficien[cy]" is that Abreu's testimony was too unbelievable to support Petitioner's conviction. (*See* Pet. Mem. at 1, 8.) The purported unbelievability of a witness' trial testimony cannot, however, support a claim of legal insufficiency. *See Crawford v. People*, 07-CV-4760 (SLT), 2010 U.S. Dist. LEXIS 64495, at *19-20 (E.D.N.Y. June 28, 2010) ("When reviewing a case for legal sufficiency, a court may not disturb the jury's findings with respect to [a witness'] credibility about testimony presented at Petitioner's trial." (quoting *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989)) (internal quotation marks omitted)).

contemporaneous objection at trial had been "grounded entirely in state evidentiary law." *Garcia*, 768 N.Y.S.2d at 606-07.

Federal habeas review of a claim is not available where the question has been decided by a state court, and the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729. The state law ground may be substantive or procedural. *Id.*

In evaluating whether the state court has found a claim to be procedurally defaulted under state law, this Court must look to the last reasoned state court opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."). To determine whether the state law ground on which the state court rested was "truly an *independent* basis for decision or merely a passing reference, such reliance on state law must be clear from the face of the opinion." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (emphasis added) (internal quotation marks and citation omitted); *see also Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997) (to preclude federal review, the state court "must 'clearly and expressly state[] that its judgment rest[ed] on a state procedural bar'") (citation omitted). To be deemed *adequate*, the state procedural rule on which the court's decision was based must be a rule that is "firmly established and regularly followed" by the state in question, *see Ford v. Georgia*, 498 U.S. 411, 423-24 (1991), and must not have been "misapplied in [the petitioner's] case in particular," *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (internal quotation marks and citation omitted).

Here, the last-reasoned state court decision is that of the Appellate Division, and it is clear from the face of that decision that Petitioner's Confrontation Clause claim was rejected as

unpreserved, *see Garcia*, 768 N.Y.S.2d at 606-07 ("Since [Petitioner's] objection to this evidence was grounded entirely in state evidentiary law, his Confrontation Clause claim is unpreserved."), which is an "independent" state-law procedural ground. Further, New York's preservation rule, requiring that parties raise specific contemporaneous objections to a trial court's rulings before challenging them on appeal, *see* N.Y.C.P.L. § 470.05(2), affords an "adequate" basis for the Appellate Division's decision. *See generally Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999); *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 192 (2d Cir. 1982); *Alvardo v. Burge*, No. 05 Civ. 1851 (AKH), 2006 U.S. Dist. LEXIS 46708, at *6 (S.D.N.Y. June 30, 2006) ("[F]ailure to object is not merely technical; the requirement of timely objection allows the trial court to consider potential errors and correct them in a timely fashion, when it most counts."). Indeed, the New York courts have repeatedly held that a hearsay objection at trial is not sufficient to preserve a Confrontation Clause argument for appeal. *See, e.g.*, *People v. Kello*, 96 N.Y.2d 740, 743-44 (2001); *People v. Maher*, 89 N.Y.2d 456, 462 (1997); *People v. Lopez*, 808 N.Y.S.2d 648, 649 (1st Dep't 2006); *People v. Chin*, 771 N.Y.S.2d 120, 121 (1st Dep't 2004).

Finally, there is no basis here for the Court to find that the state's preservation rule was inappropriately applied in this case. *See Cotto*, 331 F.3d at 240. At trial, Petitioner did not object to the testimony in question on Confrontation Clause grounds, raising what were apparently only objections based on state evidentiary law. (*See* Trial Tr. at 250-60 (arguing that the statement is hearsay, prejudicial, and irrelevant), 277-85 (arguing that the evidence is hearsay, has "no legitimate purpose," is irrelevant, and is improper "bolstering" ).) There is thus nothing in the record that suggests that the trial court had any opportunity to consider Petitioner's specific claim that the court violated his constitutional right of confrontation, or

violated any other pertinent federal constitutional right, by admitting the out-of-court statement. *See People v. Kello*, 96 N.Y.2d 740, 744 (2001) (defendant's failure to raise a Confrontation Clause objection precluded the trial court and prosecution from considering and, thus, avoiding any constitutional error). On this record, Petitioner's claim should be considered procedurally barred from federal habeas review.

Petitioner cannot overcome the procedural bar because he cannot demonstrate cause and prejudice, or a fundamental miscarriage of justice. Although Petitioner might have argued that his trial counsel was ineffective for failing to object at trial on Confrontation Clause grounds, Petitioner made no such argument in state court and thus cannot advance such a theory here. While a petitioner's attorney's ineffective assistance may constitute "cause" for a petitioner's failure to preserve a claim, an ineffective assistance claim cannot be successfully asserted as "cause" for a procedural default if that claim has not been separately exhausted and would itself be barred. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Because Petitioner has not demonstrated that any external factors prevented him from preserving his Confrontation Clause claim at trial, or that the application of the procedural bar to his Confrontation Clause claim would result in a fundamental miscarriage of justice, Petitioner cannot overcome the procedural bar.

**b. <u>Due Process Challenge</u>**

As for Petitioner's alternative argument regarding the hearsay evidence – that its admission violated his constitutional right to a fair trial – Petitioner failed to exhaust any claim based on such an argument. Although Petitioner arguably presented a federal due process claim to the Appellate Division by citing the 14th Amendment, stating that the admission of Noesi's testimony denied Petitioner the right to a fair trial, and arguing that Noesi's testimony was

highly inflammatory and prejudicial (*see* Pet. Direct Appeal Mem. at 28-29),[10] Petitioner's application for leave to appeal to the New York Court of Appeals was silent with regard to any such claim (*see* Resp. App., Ex. D). By failing to raise the claim to the highest court of the state, Petitioner failed to exhaust the claim fully. *See Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

As with his legal insufficiency claim, Petitioner's due process claim should be deemed exhausted, as Petitioner cannot not now raise the claim before the state courts. This claim is thus also procedurally barred from review in this Court, and Petitioner has again demonstrated no basis for overcoming that procedural bar.

### 3. Alleged IAD Violation and Related <u>Ineffective Assistance of Counsel (Claim 4)</u>

Petitioner alleges that his rights were violated by the prosecution's alleged failure to bring Petitioner to trial within 180 days following Petitioner's May 6, 1998 request for a final disposition of the charges against him. (Petition, ¶ 12, Ground Four.) According to Petitioner, this delay violated the IAD. (*See id.*) Petitioner further contends that he was denied effective assistance of trial counsel when his counsel failed to move for dismissal of the indictment based on this purported IAD violation. (*Id.*) Both of these claims are unexhausted, a point Petitioner effectively conceded when he requested that this Court stay these proceedings so as to enable him to exhaust these claims. (*See* Background, § 5, *supra*.)

---

[10] *Cf. Daye*, 696 F.2d at 193 (noting that the mere assertion that the petitioner was deprived of his right to a "fair trial" is insufficient to alert the state court of federal constitutional claim); *Petrucelli v. Coombe*, 735 F.2d 684, 688 (2d Cir. 1984) (petitioner's argument that "the introduction of [certain] evidence 'deprived [petitioner] of fair trial . . . and due process of law'" was insufficient to put the state court on notice of petitioner's federal constitutional claim (citation omitted)).

First, Petitioner did not raise the claims on his direct appeal, despite the fact that the pertinent facts concerning the claims – such as the delay preceding trial, the relevant adjournments, and trial counsel's failure to move to dismiss on IAD grounds – were all apparent from the face of the record, and thus the claims would have been appropriate for direct review.

Second, although Petitioner later tried to raise the claims in a state habeas proceeding (*see* Petition, at 12; *see also* Resp. App., Ex. G (Petitioner's state habeas petition)), this was not a proper avenue for exhaustion. Under New York law, a state habeas petition cannot – "absent reasons of practicality and necessity" – be used to raise claims that could have been raised on direct appeal. *People ex rel. Barnes v. Fischer*, 756 N.Y.S.2d 449, 449 (2d Dep't 2003) (citation and internal quotation omitted); *see also Lebron v. Sanders*, No. 02 Civ. 6327 (RPP), 2004 U.S. Dist. LEXIS 11819, at *10-11 (S.D.N.Y. June 29, 2004) (collecting cases). In Petitioner's case, there is no indication that "practicality and necessity" required him to raise his IAD claims in a state habeas petition, instead of on his direct appeal. Presenting claims "in a procedural context in which [their] merits [would] not be considered unless there [were] special and important reasons therefor" is generally insufficient to "fairly apprise" the state court of those claims. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *see also Levine v. Commissioner of Correctional Servs.*, 44 F.3d 121, 125 (2d Cir. 1995). As it was not likely that the state court would consider Petitioner's IAD-related claims in the state habeas context (and, indeed, did not (*see* Resp. App., Ex. I)), Petitioner's state habeas petition cannot be considered sufficient to have exhausted the claims.

Petitioner also never attempted to appeal from the trial court's rejection of his state habeas petition. (*See* Petition at 12; Resp. App., Ex. I (Decision and Order of Justice Philip A. Berke, May 23, 2005).) Section 7011 of New York's Civil Practice Law and Rules makes clear

that "[a]n appeal may be taken from a judgment refusing to grant a [state] writ of habeas corpus." N.Y.C.P.L.R. § 7011.[11] Thus, regardless of whether Petitioner could be found to have exhausted his claims via the state habeas proceeding, he, in any event, failed to appeal the pertinent adverse ruling to the highest court, as required by AEDPA. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) (presenting a claim to the "highest" state court includes seeking discretionary review when that review "is part of the ordinary appellate review procedure in the state").

Finally, although Petitioner eventually tried to exhaust these claims by way of a collateral motion to vacate his conviction under Section 440.10 of the New York Criminal Procedure Law, this was also an inappropriate avenue for exhaustion, *see People v. Cuadrado*, 830 N.Y.S.2d 65, 68 (1st Dep't 2007) (noting that, under N.Y.C.P.L. § 440.10(2)(c), a Section 440.10 motion must be denied where sufficient facts appear on the record to have permitted adequate review on direct appeal), and, again, the state court ultimately rejected the claims for this very reason, *see People v. Garcia*, No. 4867/98, slip op. at 5 (Sup. Ct. N.Y. County Jan. 14, 2008).[12] Moreover,

---

[11] Petitioner appears to admit that he should have appealed the adverse state habeas decision, and that by failing to appeal that decision he failed to exhaust his state remedies. (*See* Petition, at 12.) Indeed, it is for exactly this reason – lack of exhaustion of these claims– that Petitioner asked this Court, in April 2007, to grant a stay to permit him to exhaust. (*See* Petitioner's submission to the Court dated April 16, 2007.) As noted above, this Court declined to grant a stay because Petitioner had not shown good cause for his failure to exhaust. (*See* Order, dated March 21, 2008 (Dkt. 18), at 7.)

[12] Petitioner's June 2007 Section 440.10 motion, in which he asserted his IAD claim and related ineffective assistance of counsel claim, was denied on January 14, 2008. *See People v. Garcia*, No. 4867/98, slip op. (Sup. Ct. N.Y. County Jan. 14, 2008). In the decision denying that motion, the court (Farber, J.S.C.) held that Petitioner's IAD and ineffective assistance of counsel claims were procedurally barred because they could have been raised on direct appeal but were not: "All of the [trial] adjournments and facts required to raise this issue on appeal appear on the record and nothing prevented the [Petitioner] from raising these issues on [direct] appeal." *Id.* at 5. The court further stated that, "[e]ven if [it] were to review [Petitioner's] claims on the

Petitioner only brought his Section 440.10 motion *after* he had commenced this habeas action, which cannot suffice to satisfy the exhaustion requirement. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2007) ("The habeas statute generally requires a state prisoner to exhaust state remedies before filing a habeas petition in federal court." (citing 28 U.S.C. §§ 2254(b)(1), (c))); *McKithen v. Brown*, 481 F.3d 89, 100 (2d Cir. 2007) ("[t]he federal habeas statute normally requires a state prisoner to exhaust state remedies before filing a habeas petition in federal court"); *Bennett v. Artuz*, 199 F.3d 116, 119 (2d Cir. 1999) (noting "the 'long-standing federal policy' of requiring habeas appellants to exhaust state court remedies prior to initiating suit in federal court"); *Steed v. New York Exec. Dep't Div. of Parole*, No. 00 Civ. 2293 (SAS), 2000 U.S. Dist. LEXIS 15497, at *6 (S.D.N.Y. Oct. 25, 2000) ("A state prisoner must exhaust state remedies before filing a habeas petition.").

As discussed above, this Court may "deem" Petitioner's IAD-related claims to be exhausted at this point, given that Petitioner now plainly lacks any available avenue to pursue the claims in the state courts, but this, once again, would only result in a procedural bar to this

---

merits, the motion to vacate the conviction would still be denied" because "[Petitioner's] trial commenced within the [IAD's] 180-day limitation." *Id.* at 5-6. The court further noted that "there was little or no chance such [IAD] motion" would have been granted had it been raised by Petitioner's counsel during or before trial. *Id.* at 8.

Court's consideration of his claims. And, once again, Petitioner has not demonstrated that he can overcome such a procedural bar. In an apparent attempt to argue that he had "cause" for his failure to pursue an appeal from the denial of his state habeas petition, Petitioner contends that he "was not informed [he] could appeal the decision" and that he "lack[ed] knowledge and [received] ineffective assistance by the Legal Assistant at the Facility Law Library." (*See* Petition at 12.) These contentions, though, are insufficient to establish "cause." *See Tineo v. United States*, 977 F. Supp. 245, 254 (S.D.N.Y. 1996) (the absence of "trained paralegals" in prison library did not constitute cause); *Tapia-Garcia v. United States*, 53 F. Supp. 2d 370, 378 (S.D.N.Y. 1998) (petitioner's "ignorance of the law" did not constitute cause); *see also Washington v. James*, 996 F.2d 1442, 1447 (2d Cir. 1993) ("Ignorance or inadvertence will not constitute 'cause.'"). Petitioner has not credibly demonstrated that any external factors prevented him from pursuing an appeal from the denial of his state habeas petition – or, for that matter, from raising his claims, in the first instance, on his direct appeal. Nor, for the reasons discussed above, has Petitioner demonstrated that application of the procedural bar to his IAD claims would result in a fundamental miscarriage of justice.

Thus, Petitioner cannot overcome the procedural bar, and his IAD and related ineffective assistance of counsel claims should be dismissed on that basis.

#### 4. Ineffective Assistance of Trial Counsel Claim Relating to the Jury Instructions and Verdict (Claim 5)

Petitioner claims that his trial counsel should have made certain objections to the jury charge and the verdict, and that the failure to make those objections rendered his counsel's performance constitutionally ineffective. (*See* Pet. Supp. Mem. at 2.) Petitioner did not raise this claim regarding his trial counsel on direct appeal. He did raise it, however, in a motion for a

writ of error *coram nobis*, together with his claim that his *appellate* counsel performed in a constitutionally deficient manner by failing to raise the claim on appeal. (*See* Resp. App., Ex. J.) The Appellate Division summarily denied Petitioner's entire *coram nobis* motion, stating simply that "upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon, [i]t is ordered that said application is denied." (Resp. App., Ex. L.) Petitioner requested leave to appeal the Appellate Division's denial of his *coram nobis* motion, but that request for leave was denied. (*See id.*, Ex. M (certificate denying leave).)

As explained above, presenting claims "in a procedural context in which [their] merits [would] not be considered unless there [were] special and important reasons therefor" is generally insufficient to exhaust those claims. (*See* Discussion, § II(A)(3), *supra* (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).) Courts have recognized that *coram nobis* motions are meant to "address[] appellate errors, not trial errors, and thus ineffective assistance of trial counsel claims are not properly raised [in such motions]." *Brown v. Perlman*, 07 Civ. 8672 (RMB) (AJP), 2008 U.S. Dist. LEXIS 37546, at *114 and n.55 (S.D.N.Y. May 8, 2008) (citing cases), *adopted by* 2008 U.S. Dist. LEXIS 108387 (S.D.N.Y. June 23, 2008). For this reason, district courts have repeatedly held that raising an ineffective assistance of trial counsel claim in a *coram nobis* motion is insufficient to exhaust that claim. *See, e.g.*, *Brown v. Perlman*, 2008 U.S. Dist. LEXIS 37546, at *114 n.55 (raising ineffective assistance of trial counsel claim in *coram nobis* motion was insufficient to exhaust claim under AEDPA (citing cases)); *Gilliam v. Artus*, 653 F. Supp. 2d 315, 328-29 (W.D.N.Y. 2009) (same).

Nevertheless, the Second Circuit has held that when, as here, the Appellate Division summarily denies a *coram nobis* motion raising an ineffective assistance of trial counsel claim, such motion and summary denial are sufficient to exhaust the claim. In *Aparicio v. Artuz*, 269

F.3d 78 (2d Cir. 2001), the petitioner had claimed that trial counsel's failure to request a particular jury instruction rendered trial counsel's performance constitutionally ineffective, and, furthermore, that appellate counsel was constitutionally ineffective for failing to raise trial counsel's purported ineffectiveness on direct appeal. *Id.* at 92. Thus, in that case, as here, the petitioner's *coram nobis* motion had raised an ineffective assistance of appellate counsel claim that was based upon an underlying ineffective assistance of trial counsel claim. *See id.* As in this case, the Appellate Division summarily denied the petitioner's *coram nobis* motion. *Id.* The Second Circuit held that, under such circumstances, the ineffective assistance of trial counsel claim was in fact exhausted, for, "[a]lthough the trial counsel claim was not explicitly addressed, it was, as a technical matter, adjudicated." *Id.* at 92-93 (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).

The Court in *Aparicio* further held, however, that the ineffective assistance of trial counsel claim in that case was procedurally barred because the state court had rejected it on an independent and adequate state ground. *Id.* at 93. The Court explained that, although the Appellate Division had not stated its reasons for denying that claim, the Appellate Division's decision "had to rest on a state procedural bar . . . [and] could not possibly [have] rest[ed] on any other ground." *Id.* This had to be so, the Court reasoned, because trial counsel's failure to request a particular jury instruction could have been raised upon direct appeal but was not, and therefore could not be raised on state collateral review under New York law. *See id.* (citing N.Y.C.P.L. § 440.10(2)(c)). Here, too, Petitioner's ineffective trial counsel claim could have been raised on direct appeal but was not, and, accordingly, the Appellate Division must have denied that claim on an independent and adequate procedural state law ground. *See Davis v. Greene*, No. 04 Civ. 6132 (SAS), 2008 U.S. Dist. LEXIS 4968, at *29-31 (S.D.N.Y. Jan. 22,

2008) (holding that, under *Aparicio*, petitioner's ineffective trial counsel claim was procedurally barred because (1) that claim was only raised in a *coram nobis* motion, (2) the *coram nobis* motion was summarily denied, and (3) the state court's denial of the ineffective trial counsel claim therefore rested on an independent and adequate state law ground).

Again, Petitioner cannot overcome the procedural bar. Petitioner appears to argue that his appellate counsel's ineffective assistance provides "cause" for Petitioner's failure to raise this claim on direct appeal. Although ineffectiveness of appellate counsel in violation of the Sixth Amendment can satisfy the "cause" requirement, *see Murray*, 477 U.S. at 486-88, Petitioner here cannot prevail on his ineffective assistance of appellate counsel claim, for reasons discussed separately below. (*See* Discussion, § II(B)(2), *infra*.) As that claim is without merit, it cannot be used as "cause" to excuse Petitioner's procedural default. *See, e.g.*, *Robinson v. Conway*, 06-CV-859 (MAT), 2010 U.S. Dist. LEXIS 12684, at *11-12 (W.D.N.Y. Feb. 12, 2010). Furthermore, Petitioner has not argued that any other external factors prevented him from raising his ineffective trial counsel claim on direct appeal. Finally, as discussed above, he has not shown that the application of the procedural bar to this claim would result in a fundamental miscarriage of justice. Petitioner's ineffective assistance of trial counsel claim should therefore be dismissed.[13]

**B. <u>Remaining Claims</u>**

This Court accepts that Petitioner fully exhausted his remaining habeas claims, specifically, his claim of unfair surprise and his claim of ineffective assistance of appellate

[13] Even if this claim were not procedurally barred, it would fail on the merits. As set forth below, Petitioner's proposed objections to the jury charge and verdict would have been futile, and thus counsel's failure to make such objections did not prejudice Petitioner. (*See* Discussion, § II(B)(2), *infra*.)

counsel.[14] As the state courts adjudicated these claims on the merits, this Court must accord substantial deference to the state courts' decisions, under the standard of review dictated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254(d). The relevant section of AEDPA provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In addition, under AEDPA, a state court's factual findings are presumed correct where they are not manifestly unreasonable; this presumption can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under AEDPA, a state court decision is "contrary to" clearly established federal law where the state court either applies a rule that "contradicts the governing law" set forth in Supreme Court precedent or "confront[s] a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result.[15] *Williams v. Artuz*, 237 F.3d at

---

[14] While there might be some question as to whether Petitioner raised his "unfair surprise" claim in terms sufficient to apprise the state courts of the federal nature of that claim (*see* n.11, *supra*), for purposes of this Report and Recommendation, the Court assumes that Petitioner's reference to the 14th Amendment in connection with that claim (*see* Resp. App., Ex. A, at 32-33) was sufficient to raise a federal due process claim.

[15] The Supreme Court has emphasized that "clearly established Federal law" refers only to the "'holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also Rodriguez v. Miller*, 537 F.3d 102, 107 (2d Cir. 2007) ("*Musladin* admonishes courts to read the Supreme Court's holdings narrowly and

152 (internal quotation marks and citations omitted). An "unreasonable application" of clearly established federal law occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). The state court's decision, however, "must have been more than incorrect or erroneous" – rather, "[t]he state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting *Williams v. Taylor*, 529 U.S. at 409).

**2. <u>Petitioner's Claim of Unfair Surprise (Claim 3)</u>**

Petitioner contends that he was "prejudiced and unfairly surprised when the prosecution changed theories in the middle of the second trial." (Petition, ¶ 9(f)(3); *see id.* at ¶ 12, Ground Three.) In particular, Petitioner maintains that he was unduly prejudiced when, immediately prior to summations in Petitioner's second trial, the prosecution purportedly "announced for the first time that [it] would seek to have [Petitioner] charged as an accomplice under [New York Penal Law] § 20.00, as well as [as] a principal." (Resp. App., Ex. A, at 18; *see also* Trial Tr. at 792, 809, 812-816).) In presenting this claim, Petitioner relies entirely on the submissions he made in support of his direct appeal, without making any further argument beyond what is set forth in those papers. (*See* Pet. Mem. at 14.) Although Petitioner's state court briefs focused almost entirely on state law authority and principles,[16] at one point, Petitioner cited to the 14th

---

to disregard dicta for habeas purposes."). Thus, a principle of constitutional law "grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court" cannot provide the basis for habeas relief. *Id*. at 106-07 (citing *Musladin*).

[16] *See* Resp. App., Ex. A (brief to Appellate Division on direct appeal), at 32-36 (citing N.Y. Const., Art. I, § 6; *People v. Greene*, 75 N.Y.2d 875 (1990); *People v. Gachelin*, 237 A.D.2d 300 (2d Dep't 1997); *People v. Crumpier*, 242 A.D.2d 956 (4th Dep't 1997); *People v. Layer*, 199 A.D.2d 564 (4th Dep't 1993); *People v. Rivera*, 84 N.Y.2d 766 (1995)); *see also*

Amendment to support the proposition that "reversal is required" where the prosecution's "sudden change [has] surprised the defense and prejudiced the defense's ability to prepare for trial and cross-examine witnesses." (Resp. App., Ex. A, at 32-33.)

To the extent Petitioner seeks to reassert his state law "unfair surprise" claims here, such claims are not cognizable in a federal habeas proceeding and should be dismissed. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). As for Petitioner's 14th Amendment claim based on the same facts, the Court should dismiss the claim on the merits, under AEDPA.

In rejecting Petitioner's claim, the Appellate Division held that Petitioner

> was not prejudiced by the prosecution's pursuit of an accessorial liability theory at trial or by the court's decision to instruct the jury accordingly. Defendant had notice of the prosecution's intentions and, in any event, there is no distinction between liability as a principal and as an accessory.

*Garcia*, 768 N.Y.S.2d at 607 (citations omitted). Moreover, the court found that

> the People had made clear in a bill of particulars and in other documents that they were proceeding on the alternate theories that [Petitioner] personally shot the victims, or that he aided others in doing so, and [that] . . . the evidence supporting the theory of accomplice liability was provided by [Petitioner] in his own statement.

*Id.*

As a preliminary matter, the factual findings of the state court must be presumed to be correct, absent clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), and, here, Petitioner has provided no evidence to rebut the Appellate Division's findings. Indeed, Petitioner's briefs on direct appeal and his counsel's statements made during oral argument at trial all strongly suggest that the following facts are true:

---

Resp. App., Ex. D (request for leave to appeal Appellate Division's affirmance), at 2.

(1) that Petitioner's indictment stated that someone had shot the victims, but did not state that Petitioner himself was the shooter (*see* Resp. App., Ex. A, at 21);

(2) that, in opposition to a "speedy trial" motion submitted prior to Petitioner's first trial, the prosecution had indicated an intention to charge Petitioner as an accomplice (*see* Resp. App., Ex. A, at 19; Trial. Tr. at 813-815 (referring to prosecution's motion papers));

(3) that, in the bill of particulars submitted in August 1998, the prosecution specifically stated that "[i]t is charged that [Petitioner] in an automobile driven by another person fired multiple shots from a loaded firearm at a person or persons on the street and that certain of said shots struck and killed [the victims]." (Trial Tr. at 844, 846-47 (quoting Bill of Particulars at 3));

(4) that the Bill of Particulars further stated that Petitioner was being charged as both a principal and as an accomplice (Trial Tr. at 847-49; *see id.* at 838); and

(5) that, according to the testimony of a Dominican intelligence officer, Petitioner stated that he had been driving his car on July 22 when two of his "friends who were sitting in the back seat of the car shot [firearms] several times," hitting four people and killing two (Trial Tr. at 716-17 (referring to officer's written statement); *see also* Pet. Direct Appeal Mem. at 7).

These seemingly undisputed facts corroborate each of the Appellate Division's factual findings. Certainly, based on this record, it cannot be said that the Appellate Division's rejection of Petitioner's claim of unfair surprise "was based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(2).

Further, based on these underlying facts, Petitioner cannot show that the state court's decision on this issue was contrary to, or involved an unreasonable application of, clearly established Federal law. *See* 28 U.S.C. § 2254(d)(1). The Supreme Court has held – albeit under the Fifth Amendment, not the 14th – that a criminal defendant's due process rights are

violated where "the offense proved at trial was not fully contained in the indictment, for trial evidence had 'amended' the indictment by broadening the possible bases for conviction from that which appeared in the indictment." *United States v. Miller*, 471 U.S. 130, 138 (1985) (summarizing the holding of *Stirone v. United States*, 361 U.S. 212 (1960).) In interpreting this holding, courts in this circuit have explained that the federal constitution "permit[s] significant flexibility in [the prosecution's] proof, provided that the defendant was given notice of the core of criminality to be proven at trial." *United States v. Wozniak*, 126 F.3d 105, 109 (2d Cir. 1997) (citation omitted). In this case, Petitioner was clearly given notice of the "core of criminality" to be proven at his trial.

Likewise, the 14th Amendment's general due process guarantee, which assures the defendant a trial that is not "fundamentally unfair," *Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986); *see generally Chandler v. Moscicki*, 253 F. Supp. 2d 478, 486 (W.D.N.Y. 2003) ("A due process claim in a federal habeas petition alleging that a state prisoner was unable, based on lack of notice . . ., to adequately prepare his defense resulting in actual prejudice is largely one of state law, subject only to the general fourteenth amendment guarantees of due process." (citation and internal quotation marks omitted)), has not been offended here. The record in this case affords this Court no reason to conclude that any conduct by the prosecution in pursuing an accomplice theory of liability, or by the trial court in giving the jury an accomplice-liability charge, rendered Petitioner's trial fundamentally unfair.

For these reasons, this Court should defer, under AEDPA, to the decision of the Appellate Division with respect to Petitioner's "unfair surprise" claim, and dismiss the claim as without merit.

### 2. Ineffective Assistance of Appellate Counsel Claim Relating to the Jury Instructions and Verdict (Claim 6)

Finally, Petitioner asserts that his appellate counsel was constitutionally ineffective for failing to raise, on direct appeal, certain purported shortcomings in trial counsel's performance. (*See* Pet. Supp. Mem. at 2.) In particular, as noted above, Petitioner contends that trial counsel should have objected to the jury charge and the verdict, and that appellate counsel should have raised, on direct appeal, trial counsel's failure to object. (*See id.*)

Petitioner raised this ineffective appellate counsel claim before the Appellate Division in his *coram nobis* motion, and, although the court did not set forth its reasoning in denying the claim, the Appellate Division's decision should nevertheless be deemed an adjudication on the merits. As Petitioner properly raised the claim in his *coram nobis* motion, no applicable state procedural bar could have prevented the state court from adjudicating the merits of the claim. *See Ikker v. Taylor*, 08 CV 3301 (JG), 2008 U.S. Dist. LEXIS 98307, at *19 (E.D.N.Y. Dec. 3, 2008) ("a claim of ineffective assistance of appellate counsel can be brought at any time via a motion for a writ of error *coram nobis* in the Appellate Division"). There is therefore "no basis for believing that the Appellate Division rejected the claim on non-substantive [*i.e.*, procedural] grounds," *Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir. 2001), and, accordingly, the claim should be considered to have been adjudicated on the merits, *see id.* (holding that state court's summary denial of petitioner's *coram nobis* application constituted an adjudication on the merits of petitioner's ineffective assistance of appellate counsel claim); *see also McLeod v. Bellnier*, No. 09 Civ. 3493 (BMC), 2010 U.S. Dist. LEXIS 59921, at *16 (E.D.N.Y. June 16, 2010) (same). For this reason, AEDPA's deferential standard of review applies to this Court's review of the claim.

**a. The *Strickland* Standard**

The right to counsel in criminal prosecutions is grounded in the Sixth Amendment. Because the Constitution "envisions counsel playing a role that is critical to the ability of the adversarial system to produce just results[,] . . . 'the right to counsel is the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). Counsel can deprive a criminal defendant of this right "simply by failing to render 'adequate legal assistance.'" *Id.* at 686 (citation omitted).

In order for counsel to be deemed constitutionally "ineffective," however, counsel's conduct must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. Thus, to prevail on an ineffective assistance claim under *Strickland*, a criminal defendant must show that: (1) his counsel's performance "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694. A court may reject an ineffective assistance of counsel claim for failure to satisfy either prong of the *Strickland* standard, without reaching the other. *See id.* at 697. ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *see also Morales v. United States*, 199 F.3d 1322 (Table), No. 98-3700, 1999 U.S. App. LEXIS 27388, at *3 (2d Cir. 1999) (not addressing "whether appellant's trial counsel was unreasonably deficient in his performance because any deficiency in this regard did not prejudice appellant").

For purposes of habeas review under AEDPA, *Strickland* sets out the relevant "clearly established federal law." *Aparicio*, 269 F.3d at 95 and n.8 ("It is beyond cavil that the *Strickland*

standard qualifies as 'clearly established Federal law.'") (citation omitted). Yet, for a habeas petitioner to prevail on an ineffective assistance claim,

> he must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly.

*Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (citation omitted). "Rather, [Petitioner] must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

**b. <u>Analysis Under AEDPA</u>**

In this case, by rejecting Petitioner's challenge to the conduct of his appellate counsel, the Appellate Division did not unreasonably apply *Strickland*. Both of the objections that Petitioner claims should have been made at trial – that the jury charge was inconsistent, and that the verdict was inconsistent – find no support in relevant precedent and, accordingly, would have been futile. Consequently, they cannot support a claim for ineffective assistance of counsel.

Petitioner argues that the charge was improper because, under *People v. Gallagher*, 69 N.Y.2d 525 (1987), a criminal defendant generally may not be charged with (or convicted of) both intentional murder and depraved indifference murder, in the conjunctive, for the same victim's death, s*ee id.* at 528 ("Where a defendant is charged with a single homicide, in an indictment containing one count of intentional murder and one count of depraved mind murder, both counts may be submitted to the jury, but only in the alternative."). This specific rule is based upon the more general rule that, when the trial court charges two inconsistent counts, "it must do so in the alternative; it may not permit the jury to find the defendant guilty of both." *Id.* at 530 (citing N.Y.C.P.L. § 300.40(5) ("Two counts are 'inconsistent' when guilt of the offense

charged in one necessarily negates guilt of the offense charged in the other.")).) Petitioner contends that the intentional murder and depraved indifference murder charges against him were inconsistent because "[t]he elements in each count that related to the causing of death contained conflicting mental states, and, therefore, they negated each other." (Resp. App., Ex. J, at ¶ 15.) Thus, Petitioner argues, the jury charge, as well as the resultant guilty verdict on both counts, violated New York law, and his trial attorney should have objected to both the charge and the verdict. (*See id.*)

The flaw in this argument is that, although *Gallagher* generally forbids charging intentional murder and depraved indifference murder in the conjunctive, such charges are not *necessarily* inconsistent and may be given conjunctively in certain circumstances. In particular, as Respondent argues, a defendant may be charged with both intentional and depraved indifference murder, in the conjunctive, if the defendant is accused of shooting at one person, but hitting and killing a different person. *See, e.g.*, *People v. Monserate*, 682 N.Y.S.2d 25 (1st Dep't 1998); *People v. Mills*, 625 N.Y.S.2d 37 (1st Dep't 1995); *see also* Resp. App., Ex. K, at 9-10; Resp. Mem. at 30-32. A conjunctive charge is proper in such a situation because it would be proper for the jury to conclude that the "[d]efendant acted intentionally as to his intended victim, causing the death of the bystander victim with transferred intent, and defendant also acted with depraved indifference as to the people in the street, including the bystander victim." *Monserate*, 682 N.Y.S.2d at 26; *see also People v. Douglas*, 901 N.Y.S.2d 57, 60 (2d Dep't 2010) (defendant can be guilty of both intentional and reckless assault of the same individual where "the defendant does not harbor an intent to injure the victim but the crime is deemed intentional by operation of law under a theory of transferred intent"). In other words, where the defendant

intentionally shot at one person but accidentally hit and killed another, "more than one *mens rea* could have existed simultaneously under the circumstances." *Monserate*, 682 N.Y.S.2d at 26.

Here, because Petitioner's guilt of the one charge did not necessarily negate guilt of the other, the two charges at issue were not inconsistent. *See People v. Campbell*, 617 N.Y.S.2d 195, 197 (2d Dep't 1995) (citing N.Y.C.P.L. § 300.30[5]); *People v. Hamilton*, 859 N.Y.S.2d 156, 157 (1st Dep't 2008) ("the fact that defendant intended to shoot one victim when he fired into a crowd did not preclude a finding that he acted with depraved indifference with respect to a different victim"). Accordingly, the two charges were offered in the conjunctive consistent with New York law, *see Gallagher*, 69 N.Y.2d at 529, and the verdict was consistent with New York law for the same reason, s*ee, e.g., People v. Page*, 880 N.Y.S.2d 287 (1st Dep't 2009) (affirming conviction for both intentional murder and depraved indifference murder where "more than one potential victim was present at the shooting" and the defendant "may have possessed different states of mind with regard to different potential victims").

Because controlling state-law precedent indicates that Petitioner's proposed objections to the jury charge and verdict would have been fruitless, his trial counsel's conduct cannot be found to have fallen below an objective standard of reasonableness, *Strickland*, 46 U.S. at 687-88, and it would not have been reasonably probable that, had the objections been raised, the result of the proceeding would been different, *id.* at 692-93. Thus, the alleged failures by trial counsel cannot provide the basis for an ineffective assistance of counsel claim. *See United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) (failure to raise futile objection does not render trial counsel's performance constitutionally ineffective). As trial counsel's failure to object did not render his performance constitutionally ineffective, raising an ineffective trial counsel claim on this ground on direct appeal would have been futile. Appellate counsel's failure to raise this claim thus

cannot support a viable claim for ineffective assistance of appellate counsel. *See Muir v. New York*, 07 Civ. 7573 (JGK), 2010 U.S. Dist. LEXIS 51624, at *26 (S.D.N.Y. May 26, 2010) ("The underlying claims that the petitioner contends are a basis for an ineffective assistance of counsel claim are meritless, and appellate counsel should not be deemed ineffective for failing to raise meritless claims on appeal."); *Aparicio*, 269 F.3d at 99. I therefore recommend that Petitioner's ineffective assistance of appellate counsel claim be dismissed as without merit.

**CONCLUSION**

For the foregoing reasons, I recommend that the Petition be dismissed. I further recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Sidney H. Stein, United States Courthouse, 500 Pearl Street, Room 1010, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Stein. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d

298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983). If Petitioner does not have access to cases cited herein that are reported on LEXIS, he may request copies from Respondents' counsel. *See Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir. 2009) (noting that the Court may ask opposing counsel to provide, to a *pro se* litigant, copies of decisions that are available only electronically).

Dated: New York, New York
January 3, 2011

SO ORDERED

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Hon. Sidney H. Stein
United States District Judge

Mr. Victor Garcia
00-A-5195
Great Meadow Correctional Facility
11739 State Route 22
P.O. Box 51
Comstock, New York 12821

Sheryl Feldman, Esq.
Assistant District Attorney
County of New York
One Hogan Place
New York, NY 10013